24CA0316 Peo in Interest of AMB-Y 10-10-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0316
Boulder County District Court No. 22JV30011
Honorable J. Keith Collins, Judge

The People of the State of Colorado,

Appellee,

In the Interest of A.M.B-Y., a Child,

and Concerning C.B.C.,

Appellant,

and

K.Y.,

Appellee.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE MOULTRIE
Welling and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 10, 2024

Benjamin Pearlman, County Attorney, Debra W. Dodd, Special Assistant County Attorney, Boulder, Colorado, for Appellee The People of the State of Colorado

Robert Tweedell, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

John F. Poor, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellee K.Y.

¶ 1 In this dependency and neglect action, C.B.C. (mother) appeals the judgment allocating parental responsibilities for A.M.B-Y. (the child) to K.Y. (father). We affirm the judgment.

## I. Background

¶ 2 When the child was six months old, the Boulder County Department of Housing and Human Services (the Department) began working with mother and the child's older sibling. At that time, the sibling had been out of mother's care as part of a dependency and neglect action in another county for more than three years.

¶ 3 The child was added to the sibling's case as a non-court involved "participating child" in 2020. In 2022, the juvenile court overseeing the sibling's case ordered the Department to investigate pursuant to section 19-3-501(1), C.R.S. 2024, which authorizes a court to order a department to "make a preliminary investigation to determine whether the interests of the child or of the community require that further action be taken."

¶ 4 The Department then filed a petition in dependency and neglect concerning the then-three-year-old child. The petition alleged concerns that mother was not following court orders entered

1

in the older sibling's cases to ensure the child's safety. The petition also alleged that mother was unable to provide a safe environment for the child.

¶ 5 For about a month, the child resided with mother under protective supervision from the Department. Then the child was moved into father's care, where she resided throughout the rest of the dependency and neglect case.

¶ 6 The juvenile court adjudicated the child dependent and neglected and adopted a treatment plan for mother. Father later moved for primary custody and sole decision-making under an allocation of parental responsibilities (APR). Mother objected and moved for primary custody and sole decision-making in her own proposed APR.

¶ 7 In February 2024, nearly two years after the petition was filed and following a three-day contested hearing, the juvenile court entered an APR allocating sole custody and decision-making to father.

## II.    Reasonable Efforts

¶ 8     Mother first argues that the juvenile court erred by entering the APR judgment because the Department failed to make reasonable efforts to reunify her with the child.  We disagree.

¶ 9     A department must make reasonable efforts to rehabilitate parents and reunite families when a child is placed — or is at imminent risk of placement — out of the home.  §§ 19-1-103(114), 19-3-100.5, 19-3-208(1), 19-3-604(2)(h), C.R.S. 2024.

¶ 10    But the child was not in an out-of-home placement when the APR judgment entered — she had been with father for all but the first month of the dependency case.  § 19-1-103(107) ("Placement out of the home" means placement in a home or center operated or licensed by a department of human services.).  And the court allocated parental responsibilities between parents, not to a nonparent.  *See People in Interest of A.S.L.*, 2022 COA 146, ¶ 20 (holding that the court is required to consider reasonable efforts when it enters an APR to a nonparent).  Accordingly, the juvenile court was not required to find that the Department made reasonable efforts as part of the APR judgment.  *See*

§§ 19-1-103(114), 19-3-100.5(1), 19-3-208(1), 19-3-604(2)(h); *cf.* *A.S.L.*, ¶ 20.

¶ 11    Mother claims that reasonable-efforts findings were required in her case because the child was at "imminent risk" of out-of-home placement. Mother asserts that father had "very extensive responsibilities with regard to [his] other children."

¶ 12    We aren't persuaded. Nothing in the record suggests that the child was at any risk of out-of-home placement. To the contrary, the juvenile court found that father and his wife were "fit and appropriate parents." The court acknowledged that other children in father's home required "extra effort and care" but found that father was "able to successfully manage." The court found that "extensive" home studies in two counties found "no issues at all" with father's home and that father had "really demonstrated the ability to put [the child]'s needs at the forefront."

¶ 13    The record supports these findings. The caseworker testified that father had been "consistent and proactive in getting the services" that the child needed. The caseworker routinely observed the child in father's home and "never had concerns about [the child's] needs not being met." Father was a certified foster parent

before the child was placed with him, and the Department determined that father was "an appropriate and fit parent" at the beginning of the case.

¶ 14 Additionally, when it entered the APR judgment, the court found that "the Department ha[d] no protective concerns" and it ordered the Department to be dismissed from protective supervision. The court record and its judgment granting an APR to father and dismissing the dependency and neglect action therefore belie mother's claim that the child was at "imminent risk" for out-of-home placement.

¶ 15 In any case, the juvenile court found that "the [Department's] efforts in this case were extraordinary" and were "way above and beyond what is reasonable or expected." The record supports the court's reasonable-efforts findings. The Department devised a treatment plan for mother and assisted with transportation . The caseworker testified that the Department established "a significant amount of services" for mother, including many in her home. The Department also provided therapeutic family time because of the "high level of need for clinical support". The Department modified

therapeutic family time at mother's request to include recordings of sessions, written feedback, and multiple supervisors.

### III.    Reasonable Accommodations

¶ 16    Mother next contends that the juvenile court failed to provide reasonable accommodations under the Americans with Disabilities Act (ADA) because it denied her motion for in-home family time, more than a year before the APR hearing.

¶ 17    But mother does not explain why any prior error in the court's order denying her requested accommodation warrants a reversal of the APR judgment now.

¶ 18    Recall that mother filed a competing APR motion. The juvenile court noted that the "issues that were at play as part of the dependency and neglect case" were not necessarily the same "issues [that] impact the [court's] analysis" in deciding competing APR motions. The court found that mother consistently asked for her own APR to enter, despite newly asserting during the APR hearing that the case should be kept open to provide additional services. Accordingly, the court found that evidence about whether the Department complied with the ADA during the dependency and

neglect action wasn't relevant to its determination of which of the proposed APRs should enter.

¶ 19     We agree with the juvenile court's analysis.

¶ 20     To be sure, under the ADA, both the Department and the juvenile court must provide reasonable accommodations to a parent with a qualifying disability when providing services to that parent. 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services . . . of a public entity, or be subjected to discrimination"); *see also* 42 U.S.C. § 12102 (defining "disability" under the ADA); 42 U.S.C. § 12131(2) (defining "public entity" and "qualified individual" under the ADA).

¶ 21     Additionally, "[a] parent's disability alone must not serve as a basis for denial or restriction of parenting time or parental responsibilities" in APR judgments issued through dependency and neglect actions, except where the health and welfare of the child are impacted. § 24-34-805(2)(a)(III), C.R.S. 2024.

¶ 22     While a juvenile court must consider whether a department provided reasonable accommodations when determining if a department provided reasonable efforts to a parent, a

reasonable-efforts finding was not required here because, as discussed above, the child remained with father throughout the case, she was not at imminent risk of removal, and the court allocated responsibilities between mother and father, rather than to a nonparent. *See People in Interest of S.K.*, 2019 COA 36, ¶ 34; *see also* §§ 19-1-103(114), 19-3-100.5(1), 19-3-208(1), 19-3-604(2)(h); *cf. A.S.L.*, ¶ 20. Thus, we agree with the juvenile court that whether the Department provided reasonable accommodations wasn't relevant to its analysis related to entering an APR to a parent.

¶ 23 More importantly, mother doesn't claim that the APR judgment unduly restricted her parenting time or parental responsibilities, runs afoul of other state or federal directives concerning the ADA, or is in any way deficient. Absent such a showing, mother's request to vacate the APR judgment because of any error in denying a request for ADA accommodations during the dependency and neglect must fail. *See* C.R.C.P. 61; *see also People in Interest of C.C.*, 2022 COA 81, ¶ 20 (alleged errors not affecting the substantial rights of a party are harmless).

## IV.     Disposition

¶ 24 The judgment is affirmed.

8

JUDGE WELLING and JUDGE BROWN concur.